UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SAMUEL M. CALVIN, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 7:13-CV-0824-SLB |
| MICHELIN NORTH AMERICA, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the alternative, Motion for a More Definite Statement of Claim and Motion to Limit Plaintiff's Recovery of Damages. (Doc. 10.)[1] Plaintiff, Samuel M. Calvin, has sued his former employer, Michelin North America, Inc., alleging that defendant discriminated against him on the basis of his race, African-American, and that it retaliated against him for complaining about race discrimination. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss is due to be granted in part and denied in part; its Motion for a More Definite Statement of Claim is due to granted; and its Motion to Limit Plaintiff's Recovery of Damages is due to be denied as moot.

### I. STATEMENT OF FACTS

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

On December 13, 2012, plaintiff filed an EEOC Charge, which stated:

> I am an African American male who has worked with the above employer since April 12, 1999.  On January 3, 2012, I was placed on a Last Chance Agreement that could result in my termination for any act of insubordination.  On November 26, 2012,[2] I was terminated.
>
> The above employer stated that I was being terminated because I allegedly violated the Last Chance Agreement in that I refused to follow a supervisor's instructions in a rude and offensive manner.  I deny that I refused to follow a supervisor's instruction and was rude and offensive.
>
> I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.  Similarly situated Whites are not treated in the same manner.

(Doc. 9-1 at 1.)  He received a right-to-sue letter and filed the instant action on May 1, 2013. (Doc. 1.)  In his Amended Complaint, (doc. 9), plaintiff alleges the following facts:

> 8.  Plaintiff is African American.
>
> 9.  Plaintiff worked with Defendant since April 1999.
>
> 10.  Business Unit Leader Jack Mallory treated African American workers worse than non-African Americans.
>
> 11.  In mid-2011, Mallory reprimanded Plaintiff for eating while working.
>
> 12.  The next morning, Mike Henry (Caucasian) was eating donuts while working.
>
> 13.  Plaintiff pointed out to Mallory that Henry was eating while working and asked if Henry was going to be reprimanded like Plaintiff had been.

---

[2]Plaintiff's Amended Complaint alleges that he was terminated on November 12, 2012. (Doc. 9 ¶ 61.)

14. Mallory did not stop Henry from eating.

15. Because of instances such as this, Plaintiff spoke with Mallory's supervisor, the department manager, about discriminatory and harassing treatment.

16. Plaintiff told the department manager, "I don't know if it's because I'm black, but none of the white guys get disciplined."

17. The manager assured Plaintiff he would check into the matter.

18. In mid to late 2011, Mallory tried to get Plaintiff fired because of a disagreement between Plaintiff and Jeffery Wyman (Caucasian).

19. The incident was investigated and it was determined Plaintiff was not at fault.

20. Since that time, Mallory had it in for Plaintiff.

21. Mallory would scrutinize Plaintiff's work daily.

22. The scrutiny became so bad that, in November 2011, Plaintiff informed Shane Wallace (Caucasian) that he needed to file a report of discrimination and harassment.

23. The following day Aundra Pryor (African American) approached Plaintiff and said, "I need you to do me a favor. Could you ease up on these white folk?"

24. The next day, Pryor informed Plaintiff that the shift Plaintiff was scheduled to work had been canceled.

25. As instructed by Pryor, Plaintiff went home.

26. The next day, Plaintiff was called into the office.

27. Plaintiff was asked by management why he had left.

28. Plaintiff informed management that Pryor had told him the shift Plaintiff was supposed to work had been canceled.

29. Tommy Camp (Caucasian) informed Plaintiff that he was being suspended for a work stoppage and walking off the job.

30. Plaintiff was informed he was suspended indefinitely.

31. Camp then said, "I'm gonna be honest with you. I'm gonna try to fire you."

32. Plaintiff was suspended for 51 days without pay.

33. Plaintiff was then informed he would be brought back under a "last chance letter."

34. Camp informed Plaintiff that if he did not sign the letter he would not have a job.

35. Plaintiff came back to work in January 2012. When Plaintiff returned to work, Camp told him that he (Plaintiff) would be fired before the probationary period under the last chance letter had elapsed.

36. Shortly after he returned to work, Pryor told Plaintiff, "I just want you to know my hands were tied."

37. Plaintiff asked Pryor what he meant by saying his hands were [tied].

38. Pryor did not answer.

39. At the time Plaintiff was suspended, Pryor had been on the job three weeks and had a pregnant wife.

40. Howard Franks (Caucasian), a supervisor in the mixing department, was caught on film having sex with one of the security guards in Defendant's parking lot.

41. Franks and the security guard were caught a second time having sex in the guard shack on the floor.

42. Franks was not terminated and still works for Defendant.

43.  Jimmy Shelby (Caucasian), a supervisor, used the word "nigger" while addressing a group of black workers and was merely moved from one department to another, and still works for Defendant.

44.  In January 2012, Plaintiff was moved to the tire room, an assignment where Defendant typically places employees it wants to get rid of.

45.  Plaintiff took a trucking job in March 2012.

46.  No one had a problem with Plaintiff's work except for BR Stripling (Caucasian), a supervisor.

47.  Stripling would come in 30 minutes before his shift just to harass Plaintiff.

48.  Stripling accused Plaintiff of hiding tires.

49.  While Stripling harassed Plaintiff, he would never identify himself to Plaintiff.

50.  Plaintiff spoke with Calvin Walters, a supervisor, about Stripling's harassment in mid-March 2012.

51.  Stripling continued to harass Plaintiff.

52.  Plaintiff then went to Camp to report Stripling's harassment.

53.  Plaintiff told Camp that "I think BR has a problem with me because I'm black."

54.  Plaintiff had three conversations with Camp during which Plaintiff reported he was being harassed because of his race.

55.  Plaintiff also went to Jeff Smelley, a supervisor, in late October or early November 2012 to report Stripling's discriminatory harassment.

56.  Smelley told Plaintiff that he would look into it but that he "had been getting some complaints" about Plaintiff.

57.  Plaintiff last spoke with Camp about Stripling's harassment in November 2012.

58. On November 11, 2012, Plaintiff was instructed by Teresa Plamer, his shift coordinator to put tires in storage behind the number one painter because there was no room on the floor.

59. Stripling then told Plaintiff to put tires on the floor, which was impossible because the floor was full of tires.

60. Plaintiff informed Stripling that Plamer had instructed him to put the tires in storage, and that Plaintiff had to follow the orders of his boss until instructed otherwise by her, as Plaintiff was subject to discipline if he did not follow Plamer's orders and put tires in a place where they were not supposed to go.

61. On November 12, 2012 Plaintiff was informed he was being terminated for refusing to follow a supervisor's instruction.

62. Defendant did not investigate the situation, and failed to interview Plamer or any of the witnesses that would have supported Plaintiff in his contention that he had to follow Plamer's orders. Cedrick Arrick, Lamont Hurt, Bruce Merriweather, and Eddie Harris all witnessed that there was no room for Plaintiff to leave tires on the floor.

63. Defendant falsified statements from Mike Burton and Orlando Harris in an attempt to justify Plaintiff's termination.

64. At his termination meeting, Plaintiff was told he was being fired based on the incident the previous day.

65. His termination letter states that the incident took place on February 2, 2012.

66. The termination letter also bears the date of November 26, 2012, but the termination meeting occurred two weeks before that.

67. Plaintiff called Defendant's hotline (1-866-571-5050) on November 14, 2012, after he was fired, to report his unlawful termination (Report Number Mich-2012-11-0004, Pin Code 768B).

68. Plaintiff's position is being filled by a Caucasian employee.

(Doc. 9 at 2-7.)  His Complaint contains six causes of action: (1) race discrimination in violation of Title VII and 42 U.S.C. § 1981, (*id*. at 8, 9); (2) hostile work environment in violation of Title VII and 42 U.S.C. § 1981, (*id*. at 10, 11); and retaliation in violation of Title VII and 42 U.S.C. § 1981, (*id*. at 12, 13).

## II. DISCUSSION

### A. TITLE VII CLAIMS

#### 1. Scope of the EEOC Charge

Defendant contends that plaintiff's Title VII claims based on a racially hostile work environment and retaliation should be dismissed "because [these claims] exceed the scope of Plaintiff's prior-filed charge of discrimination with the Equal Employment Opportunity Commission ('EEOC Charge')."  (Doc. 10 ¶ 4.)  In his Response, plaintiff argues:

> To bar Plaintiff's hostile work environment and retaliation claims would constitute the kind of penalization of a lay person that the Eleventh Circuit frowns upon.  Plaintiff's hostile work environment and retaliation claims are inextricably intertwined in the pattern of racial discrimination he faced.  As noted above, Plaintiff repeatedly reported racial harassment and discrimination he was suffering before he was terminated, providing Defendant ample notice.

(Doc. 13 at 8 (citing, *inter alia*, *Green v. Elixir Industries, Inc.*, 407 F.3d 1163, 1168 (hereinafter *Green I*), *vacated* 428 F.3d 1008 and *replaced by* 152 Fed. Appx. 838 (11th Cir. 2005)(hereinafter *Green II*)).

In his EEOC Charge, plaintiff alleges that he was terminated because of his race on November 26, 2012; this date is the earliest and the latest date of discrimination.  He also mentions the Last Chance Agreement, given to him in January 2012.  He does recount any

incidents of harassment or retaliation. The court finds that his EEOC Charge is limited to claims of race discrimination with regard to the Last Chance Agreement and his termination.

The relevant facts of this case are nearly identical to the facts of *Green II*, 152 Fed. Appx. 838, 839-40; *see also Green I*, 407 F.3d at 1166. In *Green II*, an unpublished opinion,[3] the Eleventh Circuit held the plaintiff's EEOC was insufficient to provide notice of a Title VII hostile work environment claim. *Green II*, 152 Fed. Appx. at 839. The EEOC Charge at issue alleged that the earliest and latest date of discrimination was the date the plaintiff was terminated. *Id*. at 839-40. Moreover, the facts set forth on the Charge related to his termination only; he did not allege any facts regarding racial harassment. *Id*. at 840; *Green I*, 407 F.3d at 1170 (Hill, J., dissenting). The Eleventh Circuit held plaintiff's claim of racial harassment was properly dismissed; it held:

> Before filing a Title VII action, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970). Though we must liberally construe EEOC charges that are prepared without the assistance of counsel, a plaintiff's civil complaint remains "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)(quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000)).
>
> Though Green relies on *Gregory* to argue that his EEOC charge embraced a hostile environment claim, we find *Gregory* inapposite. In

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

> *Gregory*, though the plaintiff failed to check the box labeled "retaliation" on the EEOC charge, the charge nonetheless alleged facts that reasonably encompassed a claim for retaliation. *Gregory*, 355 F.3d at 1280. By contrast, all of the factual allegations contained in Green's EEOC charge relate to his termination and none relate to a retaliation claim. He noted the date of his termination as both the earliest and latest date of discriminatory conduct; explained that his termination ostensibly stemmed from attendance policy violations; and stated that white males with inferior attendance records were retained. Nothing in Green's EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred. Because the facts alleged in Green's EEOC charge form cannot be said to encompass a hostile work environment claim, we affirm the district court's finding that his claim was therefore procedurally deficient. *See Sanchez*, 431 F.2d at 466 (explaining that a Title VII complaint may encompass only the kinds of discrimination like or related to the allegations contained in the EEOC charge).

*Green II*, 152 Fed. Appx. at 840-41(footnote omitted).

The court finds that plaintiff's EEOC Charge is limited to a discriminatory discipline claim based on the Last Chance Agreement and a discriminatory termination claim. Therefore, his Title VII claims based on allegations of racial harassment and retaliation, set forth in plaintiff's Third and Fifth Causes of Action are due to be dismissed based on failure to exhaust his claims. Also, plaintiff's First Cause of Action to the extent it is based on discriminatory employment actions other than the Last Chance Agreement and the termination will also be dismissed for failure to exhaust.

**2. Title VII Claims Occurring More than 180 Days Before Plaintiff Filed His EEOC Charge.**

Pursuant to 42 U.S.C. § 2000e-5(e)(1), an EEOC Charge "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Pijnenburg v. West Georgia Health System*, 255 F.3d 1304, 1305

9

(11th Cir. 2001). Plaintiff filed his EEOC Charge on December 13, 2012. (Doc. 9-1 at 1.) Therefore, the Title VII discriminatory discipline claim based on the Last Chance Agreement, given to plaintiff in January 2012, is time barred and due to be dismissed.

The court finds that plaintiff's only exhausted Title VII claim is his discriminatory termination claim. Defendant's Motion to Dismiss, (doc, 10), is due to be granted as to plaintiff's First Cause of Action, except for his discriminatory termination claim, as well as his Third and Fifth Causes of Action. Defendant's Motion to Limit Plaintiff's Damages, (doc. 10), will be denied as moot.

**B.  REMAINING CLAIMS**

Plaintiff's Amended Complaint contains a lengthy, chronological statement of fact, and he then sets forth his six Causes of Actions, which lump together his claims and references paragraphs from his facts under certain categories of wrongful employer conduct – discrimination, hostile environment, and retaliation – and governing statute – Title VII or § 1981. Defendant contends that this court should dismiss plaintiff's Amended Complaint in its entirety or require him to replead because his Amended Complaint is an impermissible shotgun pleading.

According to Rule 10(b) of the Federal Rules of Civil Procedure, "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Fed. R. Civ.

P. 10(b). Plaintiff's Amended Complaint certainly would be much clearer as to his precise claims, and the facts supporting such claims, if he sets forth each adverse decision by defendant that he contends is actionable in a separate count together with relevant facts set forth in simple, direct, and concise statements.

Defendant's Motion to Dismiss is due to be denied as to plaintiff's remaining claims, and its Motion for a More Definite Statement will be granted. By separate Order, plaintiff's Amended Complaint, (doc. 9), will be stricken and he will be given leave to refile his Complaint, setting forth his claims under separate counts for each alleged wrongful act.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff's Title VII claims – except for his Title VII claim based on his termination, are due to dismissed based on his failure to timely exhaust his administrative remedies. The remaining claims set forth in his Amended Complaint will be stricken and leave given to plaintiff to replead. An Order granting in part and denying in part defendant's Motion to Dismiss, (doc. 10), granting its Motion for a More Definite Statement, (*id*.), and denying as moot its Motion to Limit Plaintiff's Recovery of Damages, (*id*.), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 26th day of August, 2013.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE